**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JAVIER HERNANDEZ,** | |
| Petitioner, | Case No. 14 C 5593 |
| v. | Judge Harry D. Leinenweber |
| **UNITED STATES OF AMERICA,** | |
| Respondent. | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated herein, Petitioner Javier Hernandez's ("Hernandez") Motion and Amended Motion to Vacate, Set Aside, or Correct Sentence [ECF Nos. 1 & 6] are denied.

### I. BACKGROUND

#### A. The Northern District Case

On August 23, 2005, in the underlying criminal case in this District, Hernandez was charged with the following: conspiracy to possess with intent to distribute more than one kilogram of heroin (Count One), distribution of approximately two kilograms of cocaine (Count Twelve), possession with intent to distribute approximately 18.2 kilograms of cocaine (Count Seventeen), and possession with intent to distribute approximately 40.2 grams of heroin (Count Eighteen). (Indictment, No. 5 CR 485, ECF No. 33.) The eighteen-count Indictment described a drug

trafficking network run by Hernandez's co-defendant, George Prado ("Prado"). According to the Indictment, Prado's organization was responsible for the distribution of large quantities of heroin throughout the Chicago area, and Hernandez played a role selling and storing narcotics. (*Id.* ¶¶ 2, 6.)

On December 20, 2006, Hernandez entered a blind guilty plea as to all four counts against him. At the plea hearing, Hernandez's attorney stated that a potential issue was whether Hernandez's sentence should be run consecutive to, or concurrent with, the 360-month sentence Hernandez had received for a separate conspiracy charge in the Central District of Illinois. (N.D. Plea Tr., No. 5 CR 485, ECF No. 227, at 4:13-17.) During the plea colloquy, the Court asked Hernandez about his non-written agreement with the Government. Hernandez indicated his understanding that (1) the Government would dismiss its previous notice of intention to seek enhanced penalties in exchange for his guilty plea, and (2) he would still be entitled to appeal the Court's prior denial of his Motion to Suppress. (*Id.* at 13:13-14:18.) Hernandez then affirmed that this was the extent of any agreement he had reached with the Government. (*Id.* at 14:19-21.) Hernandez also indicated his understanding that the Court could sentence him "anywhere between 120 months to life." (*Id.* at 17:14-18.)

Hernandez's sentencing took place on November 16, 2011. At the sentencing hearing, Hernandez's attorney argued that two of Hernandez's prior convictions — the 2006 Central District conviction and a 2003 state court conviction for possession of heroin — constituted relevant conduct, and thus should not be counted toward Hernandez's criminal history points. The Court found that the 2003 state court conviction was relevant conduct because of a proffer in which Prado stated that he had supplied Hernandez with the drugs in his possession. (N.D. Sent. Tr., No. 5 CR 485, ECF No. 450, at 8:19-9:8, 11:10-16.) This reduced Hernandez's criminal history points from eleven to eight, placing him in criminal history Category IV instead of V. (*Id.* at 10:24-11:16.) The additional 900 grams of heroin involved in the state case were added to Hernandez's drug quantity calculation, and Hernandez was held accountable for approximately 20 kilograms of cocaine and 2 kilograms of heroin. (*Id.* at 12:2-13:5.) However, the additional quantity did not impact Hernandez's base offense level of 34, which had been lowered to 31 based on Hernandez's acceptance of responsibility. The Court rejected defense counsel's argument that the Central District conviction was also relevant conduct simply because it involved "the same person, and . . . the same general activity." (*Id.* at 9:9-13.)

A Category IV criminal history coupled with a Level 31 offense resulted in a guidelines range of 151 to 188 months, with a 120-month minimum. The Government urged the Court to impose a guidelines sentence consecutive to the 360-month sentence imposed in the Central District, while defense counsel argued for a concurrent sentence. Hernandez himself asked the Court to apply the "5G3 rule," presumably in reference to § 5G1.3(b) of the Sentencing Guidelines, which recommends a concurrent or partially concurrent sentence when a defendant is subject to an undischarged term of imprisonment for an offense that constitutes relevant conduct.

At his sentencing, Hernandez also claimed that the Government had offered him "20 years in Peoria, 10 years in Chicago, and they were going to run it concurrent." (*Id.* at 30:23-24.) Hernandez went on:

> I said I'm not doing 20 years in Peoria because I didn't do that in Peoria . . . I said I'm willing to take the 10 years in Chicago . . . and that was exactly what was my plea . . . but it had to be a package . . . they were going to run it concurrent, together.

(*Id.* at 30:25-31:6.)

The Court ultimately sentenced Hernandez to 151 months, the bottom of the guidelines range. Recognizing that the case involved "separate conduct" from the Central District case, the Court required 60 of those months to be served consecutive to

- 4 -

the Central District sentence, with the remaining 91 months to be served concurrent with the Central District sentence. (*Id.* at 33:4-16.)

On appeal, Hernandez's court-appointed appellate counsel filed an *Anders* brief contending that it would be frivolous to challenge the Court's calculation of Hernandez's criminal history. The Seventh Circuit agreed, noting that there was "no link whatsoever" between the Northern and Central District cases, "and Hernandez offered nothing . . . beyond his counsel's bare assertion at sentencing that the two cases constituted the 'same general activity.'" *United States v. Hernandez*, 523 F.App'x 399, 400 (7th Cir. 2013). The Court also agreed that any challenge to the reasonableness of Hernandez's sentence would be frivolous. *Id.*

### B. The Central District Case

On August 19, 2005 — four days before his Indictment in the Northern District — Hernandez was charged with a single count of conspiracy to distribute cocaine and cocaine base in the Central District of Illinois. As in the Northern District, Hernandez entered a blind guilty plea, in which he pleaded guilty to conspiring to distribute only one kilogram of cocaine. Hernandez indicated his understanding that the Government would have to prove any additional drug quantities beyond a reasonable

doubt at sentencing. (C.D. Plea Tr., Ex. B. to Govt. Resp., ECF No. 14-2, at 3:11–4:11, 7:17–8:5.)

At sentencing, four individuals testified that Hernandez had provided them with at least 196 kilograms of cocaine throughout the course of the conspiracy. *See, United States v. Hernandez,* 544 F.3d 743, 744 (7th Cir. 2008). Hernandez presented no witnesses of his own, and at the conclusion of the hearing, the court found that Hernandez was responsible for distributing 159 kilograms of cocaine. *Id.* at 745.

On appeal, Hernandez argued that the district court erred in crediting witness testimony and in failing to specify how it had arrived at the particular quantity of 159 kilograms. The Seventh Circuit rejected the former argument but accepted the latter. "Because it is unclear how the district court arrived at its drug quantity calculation," the court concluded, "we cannot determine whether the government met its burden." *Id.* at 744.

On remand, the district court found that Hernandez was actually responsible for a total of 169 kilograms of cocaine. *United States v. Hernandez,* 395 F.App'x 294, 295 (7th Cir. 2010). Hernandez again appealed the quantity determination, but this time, the Seventh Circuit affirmed. The district court denied Hernandez's subsequent § 2255 petition.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the basis that the sentence was imposed in violation of the Constitution or laws of the United States. Relief under § 2255 is an "extraordinary remedy" because the petitioner "already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013).

## III. ANALYSIS

Broadly, Hernandez's Motions concern two major issues: (1) whether the Government breached an oral plea agreement, rendering his plea invalid, and (2) whether he received ineffective assistance of counsel. The Court will discuss each issue in turn.

### A. Breach of Oral Agreement

Hernandez first argues that his plea in the Northern District case was not knowingly and intelligently entered because the Government breached a purported oral agreement that

Hernandez's sentence would run concurrently with his Central District sentence.  The Government contends that Hernandez's statements during the plea hearings in both cases demonstrate that no such agreement existed, and that his statements during sentencing show that if there was any offer of concurrent sentencing, it was rejected.

A valid plea must be made "voluntarily, intelligently, and knowingly."  *Galbraith v. United States,* 313 F.3d 1001, 1006 (7th Cir. 2002) (citing *Brady v. United States,* 397 U.S. 742, 747 (1970)).  Federal Rule of Criminal Procedure 11(b) ensures these requirements are met by requiring district courts to ask a defendant certain questions during the plea colloquy.  *United States v. Gonzalez,* 765 F.3d 732, 741 (7th Cir. 2014).  Because the plea colloquy is under oath, it carries a "presumption of verity."  *Id.* (citation and internal quotations omitted).  Accordingly, "a defendant is normally bound by the representations he makes to a court during the colloquy."  *Hutchings v. United States,* 618 F.3d 693, 699 (7th Cir. 2010).  The "presumption of verity" the plea colloquy carries "is overcome only if the defendant satisfies a heavy burden of persuasion."  *United States v. Messino,* 55 F.3d 1241, 1248 (7th Cir. 1995) (citation and internal quotations omitted).

The Court turns first to Hernandez's statements at the Northern District plea hearing. During the plea colloquy, Hernandez indicated his understanding that the Government would dismiss its previous notice of intention to seek enhanced penalties in exchange for his plea, and that he would still be entitled to appeal the Court's prior denial of his suppression motion. (N.D. Plea Tr., No. 5 CR 485, ECF No. 227, at 13:13–14:18.) Hernandez did not mention any additional agreements or understandings with the Government.

Similarly, at the Central District plea hearing, Hernandez and his attorney affirmed their understanding that Hernandez would be pleading guilty to at least one kilogram of cocaine and the Government would have to establish any additional quantities at sentencing beyond a reasonable doubt. (C.D. Plea Tr., Ex. B to Gov't Resp., ECF No. 14-2, at 3:2–4:11, 7:19–8:5.) When asked during the colloquy if he had any agreement with the Government as to the position it would take at sentencing, Hernandez responded "no." (*Id.* at 7:12–16.)

Hernandez mentions that his attorney advised him not to acknowledge the existence of the plea agreement during sentencing. (Hernandez Mem., ECF No. 1, at 25.) Even if Hernandez were to argue that his lawyer had given him similar advice during the plea hearings, he would not be able to rebut

the presumption of verity his colloquy carries "[a]bsent a showing that his attorney personally directed him to hide the truth." *See, Hutchings,* 618 F.3d at 699; *see also, United States v. Peterson,* 414 F.3d 825, 827 (7th Cir. 2005) ("[A] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction."). Hernandez has provided no reason to doubt the truthfulness of his representations to the Court during either of the two plea hearings.

The Court now turns its attention to the statements Hernandez made during sentencing. In the Northern District case, Hernandez stated that the Government had offered him "20 years in Peoria, 10 years in Chicago, and they were going to run it concurrent," but that he told the Government, "I'm not doing 20 years in Peoria because I didn't do that in Peoria." (N.D. Sent. Tr., ECF No. 450, at 30:23–31:1.) In the Central District case, Hernandez made a similar statement. He stated that that the Government offered "20 years here, 10 years in Chicago, and they will run it together," but that he said, "No . . . why should I go 20?" (C.D. Sent. Tr., Ex. 3 to Gov't Resp., ECF No. 14-3, at 22:18–20.)

These late-in-the-game statements do not show the existence of a binding oral agreement for concurrent sentencing. To the contrary, they suggest that no agreement existed. Accordingly, the Court rejects Hernandez's argument that his plea was not knowing or voluntary because the Government breached an oral agreement for concurrent sentencing.

**B. Ineffective Assistance of Counsel**

Hernandez claims that he received ineffective assistance of counsel because his attorneys failed to: (1) inform him of the oral agreement or raise the agreement on appeal, (2) provide unspecified rebuttal witnesses, investigate certain FBI and DEA agents, and pursue mitigating evidence, and (3) present a buyer-seller defense.

To prevail on a claim for ineffective assistance of counsel, a petitioner must show that: "(1) counsel's performance was deficient, meaning it fell below an 'objective standard of reasonableness' informed by 'prevailing professional norms' and (2) counsel's deficient performance prejudiced the petitioner, meaning that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Smith v. Brown*, 764 F.3d 790, 795 (7th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 687–88 (1984)). To demonstrate prejudice in the

context of a guilty plea, a defendant must show that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Bethel v. United States,* 458 F.3d 711, 716–17 (7th Cir. 2006). The Court's review of an attorney's performance is highly deferential, and a defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Koons v. United States,* 639 F.3d 348, 351 (7th Cir. 2011) (citation and internal quotations omitted).

### *1. Failure to Inform Hernandez of the Oral Agreement or Raise the Oral Agreement on Appeal*

Hernandez argues that counsel "failed to give details of the oral agreement," advised him to answer "no" when asked at sentencing if had been promised anything, and failed to raise the agreement on appeal. (Hernandez Mem., ECF No. 1, at 25–26.)

The Court has already addressed the purported oral agreement above. Under oath in the two colloquies, Hernandez made no mention of any oral agreement. At two separate sentencings, he stated that he had rejected a concurrent sentencing arrangement involving a twenty-year term in the Central District. Because the record is devoid of any evidence that a valid oral agreement was in place, Hernandez cannot show that his attorney's failure to equip him with information about the agreement or raise its existence on appeal "fell below an

'objective standard of reasonableness' informed by 'prevailing professional norms.'" *Smith,* 764 F.3d at 795 (quoting *Strickland,* 466 U.S. at 687–88).

Even if trial counsel had misinformed Hernandez that his sentences would run concurrently, Hernandez has not argued that this faulty information resulted in prejudice. That is, he makes no argument that but for counsel's incorrect sentencing prediction, "he would not have pleaded guilty and would have insisted on going to trial." *Bethel,* 458 F.3d at 716–17. Hernandez was fully advised during the plea hearing that the advisory guideline range would be between 151 and 188 months, and that the district court was free to sentence him "anywhere between 120 months and life." (N.D. Plea Tr., No. 5 CR 485, ECF No. 227, at 17:14–18.) In light of this exchange, Hernandez "cannot now be heard to complain that he would not have pled guilty if he had known his sentence would be more severe than his lawyer predicted." *Bethel,* 458 F.3d at 711.

### *2. Failure to Provide Rebuttal Witnesses, Investigate FBI and DEA Agents, and Pursue Mitigating Evidence*

Hernandez's next set of arguments concern counsel's failure to provide rebuttal witnesses, investigate certain FBI and DEA agents, and pursue mitigating evidence that showed a joint conspiracy. The Government surmises that all three of these arguments relate to Hernandez's contention that the Northern

District case "should have been considered the same conspiracy or course of conduct as [the] Central District case, and thus should have resulted in a concurrent sentence" under § 5.G13(b). (Govt. Resp., ECF No. 14, at 25–26.) Section 5G1.3(b) provides for a concurrent or partially concurrent sentence when a defendant's undischarged "term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction." "Relevant conduct" includes acts and omissions "that were part of the same course of conduct or common scheme or plan as the relevant conviction." U.S.S.G. § 1B1.3(a)(2). The Government argues that Hernandez defaulted on the "same course of conduct" issue, and in any case, has failed to carry his burden under *Strickland.*

A defendant who fails to raise an issue on direct appeal may not raise it via a subsequent § 2255 petition, absent a showing of cause and prejudice. *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir. 1996). "Attorney error that constitutes ineffective assistance of counsel is cause to set aside a procedural default." *Franklin v. Gilmore,* 188 F.3d 877, 883 (7th Cir. 1999).

When his appellate attorney in this case filed an *Anders* brief, Hernandez declined the Seventh Circuit's invitation to respond, and his appeal was ultimately dismissed. *Hernandez,*

523 F. App'x at 400. Hernandez does not provide any reason for failing to argue that the Northern District and Central District cases were part of the "same course of conduct" on appeal, and his § 2255 petition does not fault his appellate attorney for failing to make this argument. Nor does Hernandez show that he was prejudiced by his attorney's failure to pursue the "same course of conduct" argument. Indeed, had the Court determined that the Central District conspiracy was part of the same course of conduct, the Court would still have been within its authority to run Hernandez's sentences consecutively. *See, United States v. Moore,* 784 F.3d 398, 404 (7th Cir. 2015). To the extent that Hernandez's ineffective assistance claims concern his attorneys' failure to show that the two cases were part of the "same course of conduct," the Court finds that Hernandez has procedurally defaulted on this issue by failing to raise it on appeal.

Even if Hernandez had not procedurally defaulted on the "same course of conduct" issue, the Court would find his arguments concerning unspecified rebuttal witnesses and federal agents, and other mitigating evidence, to be without merit. With respect to the rebuttal witnesses, Hernandez faults trial counsel for failing "to have rebuttal witnesses to support that [he] did not supply drug[s]." (Hernandez Mem., ECF No. 1, at 24.) Hernandez notes that his attorney offered a proffer from

Prado, "but without rebuttal witnesses it supported little as far as the government was concerned." *Id.* Hernandez does not develop this argument further, and it is unclear which claims should have been rebutted, or who should have been called to rebut them.

Hernandez's other arguments are likewise undeveloped. Hernandez contends that had his attorney interviewed "FBI agent(s) in Chicago or DEA agent(s) from Peoria," the information gained "may have proven the link between coconspirators who entered into a mutually cooperative relationship." (*Id.* at 26.) He further states that correspondence by two witnesses in the Central District case — Troy Powers and Melvin Marrow — would show that he is merely a middleman who has never been to Peoria. (*Id.* at 27.) Last, Hernandez criticizes counsel for failing to call his family members as mitigating witnesses. (*Id.*)

The Court finds Hernandez's arguments far too speculative to meet the high burden set forth in *Strickland*. "An ineffective assistance of counsel claim cannot rest upon counsel's alleged failure to engage in a scavenger hunt for potentially exculpatory information with no detailed instruction on what this information may be or where it might be found." *United States v. Farr,* 297 F.3d 651, 658 (7th Cir. 2002). It is

unclear from Hernandez's motion which rebuttal witnesses, law enforcement agents, and family members should have been called, or what they would have said. Nor is it clear what correspondence Hernandez refers to, or how it would show a "joint conspiracy."

Because Hernandez defaulted on the "same course of conduct" issue, and because he has otherwise failed to carry his burden under *Strickland,* the Court rejects the ineffective assistance of counsel claims based on his attorneys' failure to present unspecified rebuttal witnesses, investigate FBI and DEA agents, and pursue mitigating evidence.

### *3. Failure to Present a Buyer-Seller Defense*

Hernandez's final argument is that his trial and appellate counsel in the Northern District Case were ineffective in failing to present a buyer-seller defense. Had they done so, Hernandez argues, he would only have been charged with the drug quantities alleged in Counts Twelve (2 kilograms of cocaine), Seventeen (18.2 kilograms of cocaine), and Eighteen (40.2 grams of heroin) — not the additional kilogram of heroin resulting from the conspiracy described in Count One. The Government contends that any error in failing to argue a buyer-seller defense was harmless. Whether or not the additional kilogram of

heroin was included, the Government argues, Hernandez's base offense level of 34 would have remained the same.

Because different controlled substances were involved, Hernandez's base offense level was calculated using marijuana equivalents. *See,* U.S.S.G. § 2D1.1 n.8. The initial Presentence Investigation Report ("PSR"), dated September 25, 2007, reported that Hernandez's offenses involved approximately 20 kilograms of cocaine and 1 kilogram of heroin, which is the equivalent of "approximately 5,000 kilograms of marijuana." (Hernandez PSR at 5.) At sentencing, however, Hernandez was held accountable for approximately twenty kilograms of cocaine and two kilograms of heroin — one kilogram of heroin from the conspiracy count and an additional 900 grams based on Hernandez's relevant conduct in the state case. (*See,* Sent Tr., ECF No. 450, at 11:17–13:5.)

The Government states that the initial PSR reported a marijuana equivalent of 4,000 kilograms, which was increased by an additional 900 kilograms at sentencing, but that is not what the PSR states. It appears to the Court that Hernandez's final equivalent would have been 5,900 kilograms of marijuana rather than 4,900, as the Government reports.

Either figure yields the same result, however. Under the then-applicable guidelines, a marijuana equivalent of anywhere

from 3,000 to 10,000 kilograms resulted in a base offense level of 34.  Even if Hernandez had prevailed on a buyer-seller defense to Count One, his marijuana equivalent would still have fallen squarely within the level 34 range.  The Court therefore concludes that Hernandez was not in any way prejudiced by his attorneys' failure to raise a buyer-seller defense.

The Government identifies several other reasons why Hernandez's attorneys may not have pursued a buyer-seller defense.  Hernandez argues that he "simply purchased the alleged drug amounts from George Prado of which [he] would 'distribute to customers' solely for his own profit."  (Hernandez Supp. Mem., ECF No. 6, at 16–17.)  But as the Government notes, had Hernandez's attorneys made such an argument, the kilogram of heroin from the conspiracy charge would still have been attributed to Hernandez, and Hernandez's base offense level of 34 would have stayed the same.  Moreover, raising a buyer-seller defense to the conspiracy charge would have resulted in a loss of the three-point reduction for acceptance of responsibility that Hernandez received, which ultimately lowered his offense level to 31.  The Court finds that Hernandez has not overcome the presumption that his attorneys' decision not to raise a buyer-seller defense "might be considered sound trial strategy." *Koons*, 639 F.3d at 351.

Because Hernandez has not shown that his attorneys' failure to raise a buyer-seller defense was objectively unreasonable or resulted in prejudice, the Court rejects his final ineffective assistance of counsel claim.

## IV. CONCLUSION

Having found no grounds upon which to grant Hernandez relief under § 2255, the Court denies his Motion and Amended Motion to Vacate, Set Aside, or Correct his Sentence [ECF Nos. 1 & 6]. The Court also declines to issue a Certificate of Appealability because Hernandez has not made a substantial showing of the denial of a constitutional right. *See,* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　United States District Court

Dated: 12/16/2015